We're going to begin with oral argument on behalf of the appellant. Mr. Mitchell will recognize you. Good morning, Your Honors. Good morning. I'm here on behalf of Mr. Steven Bradford, Judge, who is currently in custody in regards to a sentencing hearing with respect to a supervised release violation. As I was reviewing the case law, Judge, and the most recent supplemental cases that the government filed, I was prepared to essentially waive oral argument to allow it to be based on the record and the case law. But I wanted to come today because the government said they needed to be here, so I wanted to be here as well in case the court has some questions. I think the key case at this point is the court just decided December 8th of this past year, which is Richards. And Richards is a decision that Justice Eve filed. And essentially, it affirmed that the court reviews the entirety of the record when looking at this with the sentencing of supervision again. And I know the government makes a point that it should be plain error review or de novo review. But I think Judge Eve, in that decision of Richards, makes it very clear that it is de novo and we're going to look at the entire record. And essentially, if you look at the entire record in this case, there's no question that this sentence that was imposed in the district court was retribution. Because essentially, the record was about a case of crime or at least allegations of offenses that had not been proven, the defendant essentially did not admit to those, and the government did not present any evidence with respect to the main case. And we're talking here as the aggravated molecular homicide case. And clearly, the district court focused on that repeatedly. And in fact, the supervision decision hearing was delayed for almost eight to nine months so that case in the state court could possibly be resolved, which it still wasn't when we had the hearing. But the record is very clear that that was the focus of the district court's judge, of the court. And the Supreme Court recently, as the government points out, essentially says that retribution cannot be an issue with respect to a supervision violation. Mr. Richard, can I ask you about that? Pardon me? I think you're talking about the Asteris case? The Asteris case, yes. So I understood Asteris to focus on retribution for the original crime of conviction. So in this case, that would be Mr. Bradford's drug trafficking conviction for which he already served his time. So I think I read Asteris to say imposing a sentence for a violation of the conditions of supervised release, the district court shouldn't focus on those retribution factors for the original crime of conviction. But that's different, I think, than focusing on retribution for the conduct that led to the violation of supervised release. So I just want to make sure I understand your argument. It looked to me from your blue brief like you were arguing that the district court improperly focused on retribution for this new conduct, the stuff that led to the revocation. But I didn't see an argument that the district court improperly focused on retribution for his old drug trafficking conviction. Am I understanding your brief right? That's correct. But in terms of the abuse of discretion and looking at the distinction made between what the probation officer recommended and the clear indication where it was imposed 36 months and additional two years of supervision, I think the record points out that the court did kind of both. It was looking at you just got out. I think the transcript says that you were just out after serving a 210-month sentence, and here you are with a gun conviction, and then the focus is on the other pending offenses as well. So even though Esteros doesn't talk specifically about further retribution, I think the Supreme Court decision has clearly indicated that the focus on the supervised release violation should be on what the violation of the court's respect of a court order not to violate supervision as part of the decision. And I think the government's point out in their second Haddad case was, again, the same thing, is that the issue is whether or not the 36-month additional time, which was double the guideline addition of the high end, and an additional supervision, the question is, well, why was that imposed? If he is simply a person who can't be trusted to rehabilitate and supervision has no use, then why then impose a 36-month sentence when the guidelines are 14 to 18 months, and then impose another two years of supervision even after that's served? That's the kind of factual basis that the court looks at to determine whether or not the factor that should not be considered in this era is being considered by the district court judge. And so our position is that if you just look at the transcript and read the transcript as a whole, look at what the probation officer recommended, what the guidelines were, what the advisory comments pretty much tell you what should be imposed, and then try to understand what the judge did in this particular case, there is no clear distinction, as the court requires, as to what is the reason from the movement from 18 months at the top end of the guidelines to 36. There is no clear distinction for this court to review. And so that's the error that I point out. That's the abuse here, because essentially it's all there. The other argument I make in my brief, and I think, again, and there's been no suggestion that this is wrong, the court was concerned with the fact that he's had these multiple supervision violations over time. And even though the guidelines say you should not be stacking that, you look at the criminal history, you look at what the guidelines say, but you do not stack multiple violations. The guidelines are what they are. The court clearly did that in this case. And that would also be an abuse of discretion as well. And so my argument is clearly that in this particular case, despite the horrific issues that were facing Mr. Bradford, the court went beyond what's provided by the case law, what's provided by the comments, and the guidelines itself, even with the probation officer. And this court does not have a clear understanding as to why that was done. And in that particular case, the resentencing has to be reversed. Unless you have questions, I will reserve my time for rebuttal. Thank you very much, Mr. Mitchell. Thank you. We'll move now, Mr. Julian, to you for argument on behalf of the appellee. Thank you. Good morning. Good morning. I want to start out where Mr. Mitchell kind of focused most of his arguments before I get into telling you why you should affirm the district court sentence, because I do think it was reasonable. Your Honor, we cited and we submitted two Rule 28J letters. I think asterisks is relevant to this appeal for one set of reasons, but we did want to bring the court's attention to Stewart and Richards, which I know Your Honor is quite familiar with Stewart, for a different set of reasons. And so I think it's the tension between Rule 51 versus Rule 52, and whether a defendant needs to accept or preserve an objection when something is happening in the case. We think that plain error is the standard of review here, respectfully because this situation is different than Richards, and it's different than Stewart in that, and we pointed this out in the latest Rule 28J letter, before the district court started to impose a sentence, and I think the before is an important distinction here. The district court turned to the parties, Mr. Mitchell and myself, and asked whether the district court was to consider all of the 3553A factors and all of the parties agreed that that was correct. And then the court went into imposing its sentence, going through the 3553A factors, and that's why the standard of review here should be plain error, as opposed to de novo. There was an opportunity to the extent that the defense thought differently to point out, and Mr. Mitchell pointed out a number of things throughout the proceeding, throughout the sentencing, that the defense disagreed with. But at that point in time, there was no disagreement that the court could consider all of the 3553A factors. That said, what the court did do in considering those factors, its rationale was primarily driven by permissible factors under 3583E and 3553. The nature and circumstances of the violations, the history and characteristics of Mr. Bradford, the defendant, the need for deterrence, general and specific, and to protect the public from further violations of Mr. Bradford, as well as the sentences, the types of sentences that were available, and the applicable guidelines. The court, the district court, was primarily concerned with 3553A1. It spent most of its time discussing that factor, the nature and circumstances of the five violations and the history and characteristics of the defendant. I think the Iowa circumstances were relevant to the district court's determination. It wasn't retribution for that underlying conduct. It was in the context, and the district court pointed this out, in the context of Mr. Bradford's history and characteristics. The court was playing about that and saying he wasn't, the district court, impressed with what he saw in speaking about the context of that underlying conviction and pointing out that maybe the district court should have imposed an even longer sentence. But, again, all of these discussions about the victim impact statements and so on came up in the context of the history and the characteristics of Mr. Bradford. The court spent a lot of time talking about the nature and circumstances of the violation, and within the context, the appropriate context and framework of a breach of the court's trust. And as we pointed out in the briefing— Counsel, I don't think there is an Asteris claim here, but if there were, do you agree that this would be an Asteris error? It would be—the court certainly cannot consider 3553A2, and Asteris made that clear. And there was some discussion during the sentencing of factors that, if this sentencing were to happen today, the district court could not talk about those factors, 3553A2. I will point out, though, Your Honor, particularly with respect to—respect for the law, and there were only three sentences that were spoken on those impermissible factors. I think it's on page 102 of the transcript. Well, I think he read victim impact statements from the prior underlying offense and things like that, right? I mean, that really goes to the severity of the underlying offense. He did do that, but in the context of when he was reading those victim impact statements, he was reading them in the context of Mr. Bradford's history and characteristics, talking about the fact that—and also the fact that deterrence, he didn't think that Mr. Bradford was deterrable, I think was a quote of his, and thinking about general deterrence to the public. He certainly did that, but I think when that came up, it came up in a permissible context. Things that would not be permissible post-Asteris were very de minimis, and I think it's three lines worth of transcript on page 102 when he said you have no respect for the law and another impermissible factor under 35.3A2. Otherwise, the district court was overwhelmingly concerned with factors that are permissible, and even if this sentencing were to happen today, the district court would have still been able to rely on those same considerations. As I've mentioned, deterrence, general and specific, the nature and circumstances of the violation, and there are a number of them, and Mr. Bradford's history and characteristics. I will point out the word seriousness came up a number of times when the district court was imposing a sentence, and we put this in the briefing. The guidelines, Chapter 7, the policy and a framework for the guidelines in speaking about the framework that a district court is supposed to go by when imposing a supervisory sentence and talking about 35.83 and the permissible 35.53A factors does use the word seriousness. In speaking about breach of trust, it says that the court does have to consider the history and characteristics of the defendant, which the district court did, and the seriousness of the violations, which when you read 35.53A1, a permissible factor, and the case is interpreting it pre-Asteris, that would have been, in the government's view, is totally permissible for the district court to consider the nature and circumstances of the violation in the context of whether it is a profound breach of the district court's trust. It would be really hard to get through a sentencing hearing without using the word serious at least once. It would certainly be quite tricky. So, I mean, if that is procedural error, we'd be reversing almost every supervised release sentence or finding a latent Asteris error in all cases because that word is ubiquitous in all sentencing and in supervised release sentencings included pre- and post-Asteris. As you point out, this court's precedents point that out. Dawson is a case that we cited too in the briefing. Martin and an unpublished opinion, Broadfield, make exactly that point. It's difficult to distinguish when you're talking about the nature and circumstances of the violation under 3553A1 and not use the word serious when talking about whether a breach of trust, a breach of the district court's trust is a profound one, as this district court found or not. Is this the right case to work out the issue that you raised in your 28J letter about the tension between Rules 51 and 52 and what the Supreme Court said in Asteris about plain error review to say nothing about the broader application of our case law about taking exception, which applies well beyond the supervised release context? I understand the question. The short answer, candidly, I'm not quite sure, Your Honor. I think this case presents a very specific factual case that I don't know is going to come up so often, which is prior to imposing the sentence, the district court turning to the parties, discussing the framework that, in the form of a question, discussing the framework and saying, hey, is this right, and the parties agreeing, and then proceeding to sentencing. Because our case law was somewhat ambiguous before that time, so you can understand his concern to get everybody on the record as agreeing with an approach. I don't know that it's going to happen that often, so I don't know if this is the case to do that, but I do think that this is a very specific circumstance that puts us in the plain error review versus the de novo review. So with that, if there are no further questions, thank you for your time. Thank you, Mr. Julian. Mr. Mitchell, we'll move back to you now for rebuttal argument. Thank you, Your Honor. I just have one issue, and I guess with respect to the Asteris issue. What the judge was concerned about was not simply Mr. Bradford's prior history and his prior conduct. He focused on the fact that he was convicted in Iowa with a drug distribution case, but because of the fentanyl, a person had died, and so he was given an extremely hard sentence in Iowa to 210 months, and that's what we argued at the sentencing. He's already been punished severely for that offense. The judge in Iowa went way over the guidelines to impose 210 months. At the supervision violation, the district court, again, focused on the death of the vehicle homicide, and he tied the two together and said this is, again, another person who's not here. This person is not here, and he continued to supervise release issue over nine months to determine what was going to happen. I want to hear the victims. I want the government to bring the vehicular homicide family victims here so I can hear them. They eventually didn't come to court, but it was pending. That was the overriding issue, and I think the issue becomes is it clear? Clearly, we're not just simply saying that it was not a serious violation of the court's trust in this case, but the way it was couched in this case was that Mr. Bradford had a somehow disregard for life because of the pending vehicular homicide case and tied that to the fact that he had the same kind of disregard for life in the distribution case, and I argued, Judge. Clearly, none of his violations in this case dealt with drug distribution. None of the violations dealt with anything that he had ever been convicted of before, so these were new issues. The first one he pled guilty, which was the gun charge, and clearly we agreed with the 3553A factors for that because he had no history of gun use. He had no history of violence whatsoever, but it was continued and continued and continued where he was brought from the state court, Cook County, back to the federal court on detention so that that one issue can be addressed with respect to the vehicular homicide, which he did not plead. There was no agreement in regard to that. In fact, the government didn't present any evidence with respect to the vehicular homicide. They focused on the traffic violation, the proposed speeding and being at the bar with alcohol. This issue where the judge focused with the entire record, I think, is the proper way to go. What was he thinking when he imposed this higher sentence? And I understand Haddad was different because in that case, even with the plain error, we still win because he clearly was substantially affected by this decision. Unlike with Haddad where the guidelines were simply three to nine months, four to ten months where the court ruled, well, it wouldn't have made any difference. So there was no substantial prejudice, in fact, if, in fact, they hadn't considered this. In this case, there is. The guidelines were doubled to high end in this case and supervision was added an additional two years. So even under the plain error standard, this sentence needs to be reversed. Unless you have any other questions, that's all I have, Judge. Thank you, Mr. Mitchell. Thank you, Mr. Julian. The case will be taken under advisement.